

**BY ORDER OF THE COURT**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Dec 07, 2020
Michelle Rynne, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | MAG. NO. 20-01472 RT |
| | ) | |
| Plaintiff, | ) | CRIMINAL COMPLAINT |
| | ) | |
| vs. | ) | |
| | ) | |
| JOSHUA KALA JOSEPH, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

### Count 1
Distribution of 50 grams or more of Methamphetamine,
(21 U.S.C. § 841(a)(1) and 841(b)(1)(A))

On or about November 16, 2020, within the District of Hawaii, JOSHUA KALA JOSEPH, the defendant, did knowingly and intentionally distribute 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

## Count 2
Distribution of 5 grams or more of Methamphetamine,
(21 U.S.C. § 841(a)(1) and 841(b)(1)(B))

On or about November 23, 2020, within the District of Hawaii, JOSHUA

KALA JOSEPH, the defendant, did knowingly and intentionally distribute 5 grams

or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule

II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and

841(b)(1)(B).

## Count 3
Distribution of 5 grams or more of Methamphetamine,
(21 U.S.C. § 841(a)(1) and 841(b)(1)(B))

On or about November 23, 2020, within the District of Hawaii, JOSHUA

KALA JOSEPH, the defendant, did knowingly and intentionally distribute 5 grams

or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule

II controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and

841(b)(1)(B).

## Count 4
Unlawful Dealing in Firearms,
(18 U.S.C. § 922(a)(1)(A))

On or about November 16, 2020, within the District of Hawaii, JOSHUA

KALA JOSEPH, the defendant, not being a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, did willfully engage in the business of dealing in firearms.

All in violation of Title 18, United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D).

### Count 5
Possession of a Firearm in Violation of the National Firearms Act
(26 U.S.C. §§ 5841, 5861(d), and 5871)

On or about November 23, 2020, within the District of Hawaii, JOSHUA KALA JOSEPH, the defendant, knowingly and unlawfully possessed a firearm not registered to him in the National Firearms Registration and Transfer Record, namely a privately-made AR-15-style rifle, knowing that the firearm had a barrel measuring less than 16 inches.

All in violation of Title 26, United States Code, Sections 5841, 5861(d), and 5871.

//

//

//

//

//

3

I further state that I am a Special Agent with the United States Drug Enforcement Administration, and that this Complaint is based upon the facts set forth in the attached "Affidavit in Support of Criminal Complaint", which is attached hereto and incorporated herein by reference.

DATED:  HONOLULU, HAWAII: December 7, 2020.

GABRIEL GRAY
Special Agent
Drug Enforcement Administration

Sworn to under oath before me telephonically and attestation acknowledged pursuant to FRCP 4.1(b)(2).



Rom A. Trader
United States Magistrate Judge

4

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, GABRIEL GRAY, being duly sworn, deposes and states as follows:

1.      I am a special agent with the United States Drug Enforcement Administration ("DEA") and have been so employed since September 2019.  I am currently assigned to the Los Angeles Field Division's Honolulu District Office where I investigate various drug related crimes: drug trafficking, drug manufacturing, and drug sales. Prior to being assigned to the Los Angeles Field Division, I was assigned to the San Diego Field Division, and prior to that I completed eighteen (18) weeks of training at the DEA Academy in Quantico, Virginia (VA).  Prior to becoming a Special Agent with the DEA, I graduated the from the George Washington University in 2015, and upon doing so, joined the Washington, D.C. Metropolitan Police Department (MPD) as a police officer until November of 2017. From November of 2017 until September of 2019, I was employed as a police officer with the San Diego Police Department (SDPD). During my tenure with both the MPD and the SDPD, I was involved in many investigations ranging from drug offenses to attempted murder investigations.  I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.  I have been involved in numerous drug-related arrests, numerous search

warrants, and surveillances. I have debriefed numerous narcotics traffickers following their arrest. I have participated in drug trafficking investigations in which court-authorized searches of cellular phones were utilized.

2.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers. This affidavit is intended to show merely that there is sufficient probable cause for the specified violation of federal law and does not set forth all of my knowledge about this matter.

3.    This investigation utilizes information from a Confidential Source ("CS"). Prior to his or her cooperation with the DEA, the CS was under investigation for the distribution of multi-ounce quantities of methamphetamine. The CS is cooperating with the DEA with the hope of receiving reduced charges, but the DEA have made no specific promises in this regard. DEA personnel have found the CS to be reliable, and the information provided by CS has been independently corroborated and credible. Moreover, as described in further detail below, DEA personnel have utilized the CS to successfully conduct three controlled purchases of methamphetamine and multiple firearms from JOSHUA JOSEPH.

4.    In mid-November, 2020, at the direction of DEA special agents, the CS organized the controlled purchase of two ounces of methamphetamine and one

9mm "ghost" style handgun from JOSHUA KALA JOSEPH ("JOSEPH"). Based on my training and experience, I am aware that a "ghost" style firearm is one that does not contain a serial number, and is typically manufactured privately, rather than by commercial firearms manufacturers. I know based on my training and experience that individuals can purchase "kits" to make such firearms. The kits include gun components that do not require sophisticated knowledge or machinery to assemble. Typically, the gun components require drilling a few holes or similar, basic work to complete a firearm. Based upon my training and experience, many individuals prefer "ghost" guns, also known as privately-made firearms, because the firearms do not contain traceable serial numbers and, because the assembled firearm never traveled in interstate commerce, certain firearms felonies are more difficult to charge.

5.     On November 16, 2020, the CS placed a recorded phone call to JOSEPH to discuss the plan to meet for the drug and gun transaction. During the phone call, JOSEPH relayed to the CS that he was in possession of one handgun, but did not yet have the methamphetamine that the parties had previously discussed. Later, JOSEPH notified the CS via recorded text message that he had obtained the methamphetamine and was ready to meet. At the time for the meeting, law enforcement observed JOSEPH arrive at an agreed upon meeting location in the vicinity of the Ala Moana Mall in Honolulu, Hawaii. During the

meeting, officers observed the CS meet with JOSEPH at JOSEPH's car.  Prior to the meeting, law enforcement officers searched the CS for firearms and narcotics, and discovered neither in his/her possession.  The CS reported that at the meeting, JOSEPH sold the CS approximately two ounces of methamphetamine, and one 9mm "ghost" handgun for $3,000.00 in government funds.  The meeting was recorded for sound, and I have reviewed the recording, which is consistent with the CS's statements.  Immediately after the transaction, law enforcement officers seized approximately two ounces of methamphetamine and one 9mm "ghost" handgun from the CS.

6.      On November 22, 2020, JOSEPH sent a recorded text message to the CS stating he had an AR-15 style "ghost" firearm for sale.  The CS relayed to JOSEPH that he/she was interested in purchasing the firearm.  On November 23, 2020, the CS, at the direction of DEA special agents, contacted JOSEPH via recorded telephone call and set up the purchase of one AR-15 style "ghost" firearm and two ounces of methamphetamine from JOSEPH for $2,700. That afternoon, law enforcement observed the CS meet with JOSEPH in the vicinity of Ward Avenue in Honolulu, during which time, officers observed the CS get inside JOSEPH's vehicle.  The CS later reported that JOSEPH sold approximately one ounce of methamphetamine (apparently, JOSEPH was only able to get one of the two ounces originally promised), and one AR-15 style "ghost" firearm to the CS.

Prior to the meet, law enforcement officers searched the CS for firearms or narcotics, and found neither.  The transaction was recorded for sound, and I have reviewed the recording of the transaction and it is consistent with what the CS reported.  During the transaction, JOSEPH stated to the CS that he had three additional AR-15 style "ghost" firearms for sale. The CS informed JOSEPH that the CS would notify him later in the day about purchasing the additional firearms. Immediately after the transaction, law enforcement seized approximately one ounce of methamphetamine and one AR-15 style "ghost" firearm from the CS.

7.     Later on November 23, the CS informed me that he/she and JOSEPH spoke via phone call (not recorded) about the purchase of the three remaining AR-15 style "ghost" firearms and one ounce of methamphetamine.  The CS coordinated the deal via recorded text messages.  That evening, law enforcement officers observed the CS and JOSEPH meet at a pre-arranged location in the vicinity of Ward Avenue in Honolulu.  Prior to the meeting, law enforcement officers searched the CS for firearms or narcotics and found neither.  During the meeting, the CS reported that JOSEPH sold the CS approximately one ounce of methamphetamine and three AR-15 style "ghost" firearms for $6,000.00 in government funds.  The meeting between the CS and JOSEPH was recorded for sound.  I have reviewed that recording, and it is consistent with what the CS reported.  Immediately after the meeting, law enforcement officers seized one

9

ounce of methamphetamine and three AR-15 style "ghost" firearms from the CS.

8.     The rifles purchased by the CS from JOSEPH were presented to SA Joseph Villagomez of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").  Based on SA Villagomez's review of the firearms, I am informed that two of the AR-15 style "ghost" firearms constituted rifles with barrel lengths of less than 16 inches, which qualify as "firearms" under Title 26, United States Code, Section 5845(a).  Accordingly, in order to possess such a weapon, JOSEPH was required by the National Firearms Act to ensure that firearm was registered with the Secretary of the Treasury, and that a tax was paid.  I am informed by SA Villagomez that he checked the National Firearms Registration and Transfer Record, and that there are no records related to JOSEPH or these firearms.

9.     I am also informed by SA Villagomez that according to ATF's national database of licensed firearms dealers, JOSEPH is not a licensed firearms dealer.

//

//

//

//

//

//

10

10.    The methamphetamine from all three of the aforementioned controlled purchases field-tested positive for methamphetamine. Methamphetamine is a schedule II controlled substance.

FURTHER AFFIANT SAYETH NAUGHT.

DATED: Honolulu, Hawaii, December 7, 2020.

_____
Gabriel Gray
Special Agent
Drug Enforcement Administration

Sworn to under oath before me telephonically and attestation acknowledged pursuant to FRCP 4.1(b)(2).

Based upon the foregoing, the undersigned Judicial Officer finds that there is probable cause to believe that defendant above-named committed the crimes charged in the Criminal Complaint, this __7th__ day of December 2020



_____
Rom A. Trader
United States Magistrate Judge